## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| INFORMD, LLC | : | CIVIL ACTION NO. 3:13-cv-533 |
| | : | |
| VERSUS | : | JUDGE: JAMES BRADY |
| | : | |
| DOCRX, INC. AND BRIAN WARD | : | MAGISTRATE JUDGE: ERIN WILDER-DOOMES |

## INFORMD PARTIES' RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CONTRACT INTERPRETATION

NOW INTO COURT, through undersigned counsel, come InforMD, LLC, Mickey Guidry, Jesse Daigle, Scott Ray, Richard Massengale, and IITWI, LLC (hereafter the "InforMD Parties"), who respectfully file this Rule 56 motion for partial summary judgment regarding the interpretation of the subject settlement agreement.

### THE SETTLEMENT AGREEMENT

1.

On or about November 11, 2011, Plaintiff and Defendants, as well as seven (7) other individuals and two (2) additional limited liability companies, entered into a settlement agreement. That settlement agreement compromised certain claims pending in two different lawsuits: one case that was then pending in Alabama and one case that was then pending in Louisiana. Specifically, first, the settlement agreement resulted in the dismissal with prejudice of certain claims pending in the lawsuit entitled, *DocRX, Inc. v. Dox Consulting, LLC, et al*, No. 1:10-cv-00364-C (S.D. Ala. 7/14/2010). It was originally filed on June 10, 2010 in Mobile County Circuit Court and later removed to U.S. District Court for the Southern District of Alabama (hereafter the "**Alabama Lawsuit**"). Second, the settlement agreement resulted in dismissal of certain claims pending in the lawsuit entitled, *IITWI, LLC v. Brian Ward, et al*, Civil

Action No. 10-762-JJB-DLD (M.D. La.).  It was originally filed on September 8, 2010 in the 19th J.D.C. in East Baton Rouge Parish and later removed to the U.S. District Court for the Middle District of Louisiana (hereafter the "**Louisiana Lawsuit**").

2.

The settlement agreement was primarily finalized through the agreement entitled, "CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT," a copy of which is attached hereto as Exhibit A-1.[1]  It lists as parties the following companies and individuals: DocRX, Inc. and Brian Ward (hereafter the "**DocRX Parties**") and Dox Consulting, LLC, InforMD, LLC, Mickey J. Guidry, Jesse N. Daigle, Richard Massengale, and Christopher D. Lee, Scott Ray, Garrett Hebert, and Stacy Patin (hereafter the "**Dox Parties**").  A document entitled "RELEASE," denoting the same parties, was also prepared to finalize the settlement agreement, a copy of which is attached hereto as Exhibit A-2.  Most of the Dox Parties are also InforMD Parties, but the descriptive terms are not interchangeable.

3.

On September 8, 2011, a letter agreement outlining an agreement in principle was reached.  The letter agreement served as a prelude to the agreement described above.  A copy of the letter agreement is attached as Exhibit A-3.  The September 8, 2011 letter agreement expressly states that it was "*subject to finalization in a formal agreement, together with necessary related documents to effect the closing of a settlement agreement.*"  Exhibit A-3 (emphasis added).

---

[1] The InforMD Parties have filed a separate motion for summary judgment on the basis that the subject Non-Compete Agreement is void and unenforceable as a matter of law because it constitutes an unreasonable restraint on trade.  See R. Docs. 104, 104-1, and 127.  That motion is currently pending.  For purposes of this motion only, however, the InforMD Parties assume that the subject Non-Compete Agreement is enforceable.

1272138.1

4.

On November 30, 2011, nineteen (19) days after the settlement agreement described above was entered, a joint "PRO TANTO SETTLEMENT AND STIPULATION FOR DISMISSAL" was filed in the Alabama Lawsuit.   The joint stipulation was signed by counsel for Plaintiff in that case (DocRX, Inc.) and counsel for the individual "Settling Defendants" in that case (Mickey Guidry, Jesse Daigle, Rick Massengale, Scott Ray, Stacy Patin, and Garrett Hebert).  A copy of the joint stipulation is attached hereto as Exhibit A-4.  The terms of the "PRO TANTO SETTLEMENT AND STIPULATION FOR DISMISSAL" are consistent with the terms of the "CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT" (Exhibit A-1).  After receiving the joint stipulation, the Alabama Lawsuit Court (J. Cassady) issued an Order dismissing with prejudice all claims asserted against Mickey Guidry, Jesse Daigle, Rick Massengale, Scott Ray, Stacy Patin, and Garrett Hebert.  Other claims in the Alabama Litigation were not affected by the settlement and remained active, including claims against an entity that filed for bankruptcy protection with the U.S. Middle District (Dox Consulting, LLC).

5.

The "CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT" (Exhibit A-1), was made effective on November 8, 2011, more than four years ago.

6.

The joint stipulation entitled "PRO TANTO SETTLEMENT AND STIPULATION FOR DISMISSAL" (Exhibit A-4) was filed in the Alabama Lawsuit several days after the Dox Parties

3

signed and transmitted to the DocRx Parties the "CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT" (Exhibit A-1).

7.

On or about August 5, 2013, Plaintiff, InforMD, LLC ("**InforMD**"), received a letter from counsel for the DocRx Parties, a copy of which is attached hereto as Exhibit A-5. The August 5, 2013 letter references what DocRX's Counsel deems the collective "Settlement Agreement," including the "CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT" (Exhibit A-1), the "RELEASE" (Exhibit A-2), the September 8, 2011 Letter Agreement (Exhibit A-3), and the PRO-TANTO SETTLEMENT AND STIPULATION FOR DISMISSAL (Exhibit A-4). Following the Settlement Agreement and prior to receipt of that letter, InforMD had been paying to DocRX sums that both parties believed were due to be paid under that agreement. The August 5, 2013 letter demands additional money that the DocRX Parties claimed for the first time that they were entitled to receive under their self-serving interpretation of the collective "Settlement Agreement" documents.

8.

Plaintiff InforMD alleges in its Complaint that DocRX, Inc.'s demands are not supported by the plain language contained in the collective "Settlement Agreement" documents. R.Doc. 1.

9.

The focal point of the dispute concerns whether InforMD is entitled to keep 100% of its "gross profit" from its sales, services or other business that is derived from products, business concepts, ideas or other information first developed by InforMD after the November 11, 2011 Settlement Agreement. The dispute also concerns whether the 2011 Settlement Agreement is

enforceable and, if so, then to what extent. The InforMD Parties filed a motion for partial summary judgment on that issue that is currently pending. R. Docs. 104, 104-1, and 127.

10.

The collective 2011 Settlement Agreement documents differentiate between two types of business lines: (1) those which arise from, relate to, or are in any way connected with "Pre-Settlement Information" (called "**Pre-Settlement Business**"), and (2) those which arise from, relate to, or are in any way connected with "Post-Settlement Information" (called "**Post Settlement Business**").

11.

With respect to Pre-Settlement Business, the collective Settlement Agreement documents purportedly require InforMD to pay DocRX fifteen percent of: "any and all sales, services or other business from which the Dox Parties derive revenue (including, without limitation, the Dispensing Business) which has previously, is presently, or is in the future engaged in or offered by the DocRx Parties *and which arises from, relates to or is in any way connected with the Dox Parties' use or possession of the Pre-Settlement Information*, except for revenues derived by the Dox Parties from sales or services to [PSS/DSI] (the 'Pre-Settlement Business')..." Exhibit A-1, p. 2 (emphasis added).

12.

Under the circumstances, and considering all language contained in the collective Settlement Agreement documents, the only reasonable interpretation of the settlement terms allows InforMD to keep 100% of its "gross profits" where (i) InforMD discovers or comes up with the product, business concept, idea or other information first and/or where (ii) the product, business concept, idea or other information originates after the settlement and independent of any

information that the Dox Parties' derived from the DocRX Parties during their employment as sales representatives for DocRX's Dispensing Business.

13.

Under DocRX's interpretation, however, DocRX would be entitled to collect 15% on InforMD's "gross profit" on any business line carried by InforMD (now or in the future) with the only condition precedent to payment being that DocRX would have to "offer" that same business line previously, presently, or "in the future." Exhibit A-3, ¶ 3. Under DocRX's interpretation, DocRX could enter any business line in which InforMD was already competing and demand a 15% share of InforMD's "gross profits" without doing any of the work. In such a case, the work being performed by InforMD (in progress) would not necessarily be based on or arise from "Pre-Settlement Information" such that the stated definitions contained in the Settlement Agreement would not fit the putative interpretation. Therefore, DocRX's position is untenable.

14.

Additionally, DocRX's interpretation ignores or renders inoperative and meaningless certain language and provisions of the Settlement Agreement such that DocRX's interpretation violates general rules of contract interpretation.

15.

The text of the Settlement Agreement documents is undisputed. With respect to the correct interpretation of the settlement documents, there are no material facts in dispute. Accordingly, this matter is ripe for summary judgment.

### INFORMD'S PHARMACEUTICAL COMPOUND CREAM BUSINESS LINE

16.

In early 2012, InforMD's CEO, Rick Massengale, became aware of an opportunity to develop a business line in the healthcare industry often referred to as "compounding" or "compound pharmacy." Exhibit B, Deposition of Richard ("Rick") Massengale, p. 52, Lines 19-22. Through this business, InforMD marketed certain compound creams. The creams were prescribed by physicians and then mailed directly to the patient by the pharmacy. Exhibit A, Affidavit of Richard Massengale, ¶ 9. InforMD acted as a go-between and facilitated the marketing of compound creams to physicians through independent sales representatives.

17.

InforMD's compounding business line is different from the business lines that the DocRX Parties were engaged in at the time the collective 2011 Settlement Agreement documents were executed. Exhibit A, ¶ 9. The compounding business line was not engaged in by DocRX or InforMD until well after the 2011 Settlement Agreement. Exhibit B, p. 52, Lines 19-22.

18.

Indeed, the DocRX Parties were not engaged in compounding at any time before the execution of the collective 2011 Settlement Agreement documents. Exhibit B, p. 52, Lines 19-22; Exhibit C, Defendants' Supplemental Responses to Interrogatories dated October 28, 2015, p. 2. Therefore, the Dox Parties could not have received any "Pre-Settlement Information" from DocRX concerning the compounding line of business. Rather, compounding is an altogether different business that was developed by InforMD without input or assistance from DocRX.

7

19.

Sometime around August/September 2012, InforMD received its first remuneration from the compounding business line.  Exhibit B, p. 52, Lines 19-22.

20.

Brian Ward became aware of the opportunities presented by compounding in the fall of 2012. Exhibit B, p. 70, Lines 17-23.  In fact, it was InforMD's CEO, Rick Massengale, who shared with Brian Ward InforMD's collection rate on the mail-order compounding line of business on or around September 8, 2012, well after the execution of the collective Settlement Agreement documents. Exhibit B, p. 70, Lines 17-23.

21.

Approximately four weeks after InforMD told DocRX about its success in compounding (via Massengale's communications with Ward), the DocRX Parties began their own compounding line of business, competing with InforMD.  The DocRX Parties received their first remuneration from their compounding line of business on or around "October 12, 2012."  Exhibit C, Defendants' Supplemental Responses to Interrogatories dated October 28, 2015.

22.

InforMD's mail-order compounding business line was created well after the 2011 Settlement Agreement, is different from any business engaged in by DocRX prior to the Settlement Agreement, and therefore is not "Pre-Settlement Business" for purposes of the collective Settlement Agreement documents.  Nevertheless, counsel for the DocRX Parties sent InforMD a demand letter on August 5, 2013 claiming that InforMD owed DocRX "commissions" for its compound cream business.  The demand letter stated as follows:

> It is our understanding that InforMD is currently conducting the same business as DocRX insofar as InforMD is (among other activities) in the business of

8

providing compound pharmacy services.   Given that DocRX, Inc. is in the business of providing compound pharmacy services, any such business being performed, provided, or conducted by InforMD requires InforMD to pay the 15% commission as stated in the Settlement Agreement. *The fact that DocRX was not or may not have been in that business at the time of the Settlement Agreement is irrelevant because the Settlement Agreement contemplates clearly that it would include payment of a commission on all business that DocRX would have been conducting "in the future" pursuant to the Settlement Agreement*. Given that in this present time DocRx is providing such services, and given that InforMD is also providing such services concurrent at the time that our client is providing such services, the 15% is clearly owed.

Exhibit A-5, August 5, 2013 Letter.

23.

Given the undisputed text of the 2011 Settlement Agreement documents, the DocRX Parties' interpretation is erroneous. Moreover, DocRX cannot meet its burden to demonstrate that InforMD's "compounding" business line was created using confidential "Pre-Settlement Information" where DocRX was not even in the compounding business during the time frame when the "Pre-Settlement Information" was allegedly conveyed to the Dox parties.

24.

The text of the Settlement Agreement documents is undisputed.   Moreover, it is undisputed that, based on the definitions set forth in the collective Settlement Agreement documents, InforMD's compounding business line is not "Pre-Settlement Business" for which the DocRX Parties are owed a 15% Payment.   Accordingly, this matter is ripe for partial summary judgment.

25.

In support of this motion for partial summary judgment, the InforMD Parties attach the following exhibits:

- **Exhibit A:**          Affidavit of Richard ("Rick") Vance Massengale;

- **Exhibit A-1:**     CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT;

- **Exhibit A-2:**     RELEASE;

- **Exhibit A-3:**     RULE 408 INADMISSIBLE COMPROMISE COMMUNICATION;

- **Exhibit A-4:**     PRO TANTO SETTLEMENT AND STIPULATION FOR DISMISSAL;

- **Exhibit A-5:**     August 5, 2013 Demand Letter from DocRX Counsel;

- **Exhibit B:**     Deposition of Richard ("Rick") Vance Massengale;

- **Exhibit C:**     Defendants' Supplemental Responses to Interrogatories dated October 28, 2015;

- **Exhibit D:**     Deposition of Brian Ward dated November 16, 2015; and

- **Exhibit E:**     Deposition of Hootan Melamed dated February 12, 2016.

**WHEREFORE**, Plaintiff, InforMD, prays that its motion be deemed good and sufficient, and, after due proceedings are had, that this motion be granted and partial summary judgment be rendered in favor of the InforMD Parties: (1) declaring that InforMD is entitled to keep 100% of its "gross profit" from its sales, services or other business that is derived from products, business concepts, ideas or other information unrelated to any "confidential" Pre-Settlement Information obtained by the Dox Parties in their capacities as sales representatives for DocRX's Dispensing Business; and, specifically, (2) that InforMD is entitled to keep 100% of its "gross profit" from its compounding business line. In addition, the InforMD Parties respectfully move this Honorable Court to (3) dismiss all counterclaims to the extent they are predicated upon a finding that any of the InforMD Parties are obligated to make payments to the DocRX Parties for any portion of its profits on its compounding business line.

Respectfully submitted,

**Taylor, Porter, Brooks & Phillips L.L.P.**

By:   s/ Tom S. Easterly
      Robert W. Barton (#22936) T.A.
      Edward D. Hughes (#28617)
      Tom S. Easterly (#30488)
      450 Laurel Street, 8th Floor
      P.O. Box 2471
      Baton Rouge, LA 70801/70821
      Phone: (225) 387-3221
      Fax: (225) 346-8049
      Bob.Barton@taylorporter.com
      Eddie.Hughes@taylorporter.com
      Tom.Easterly@taylorporter.com
      *Attorneys for the InforMD Parties*

      and

      **HARPER LAW FIRM**

      Jerald R. Harper (#6585)
      213 Texas Street
      Shreveport, LA  71101
      Telephone:     (318) 213-8800
      Facsimile:       (318) 213-8804
      Jerry@harperfirm.com
      *Attorneys for the InforMD Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of this Court's electronic filing system.  I also certify that I have mailed by United States Postal Service this filing to all of the non-CM/ECF participants in this matter.

      s/ Tom S. Easterly
      Tom S. Easterly

1272138.1