UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

INFORMD, LLC

                                     CIVIL ACTION

VERSUS

                                     NO. 13-533-JBB-EWD

DOCRX, INC. AND BRIAN WARD

### RULING ON (1) MOTION TO COMPEL DISCOVERY RESPONSES; (2) INFORMD, LLC'S MOTION FOR PROTECTIVE ORDER; AND (3) JESSE DAIGLE AND MICKEY GUIDRY'S MOTION FOR PROTECTIVE ORDER

Before the Court are: (1) a Motion to Compel Discovery Responses filed by DocRX, Inc. ("DocRX") and Brian Ward (collectively, "Defendants");[1] (2) InforMD, LLC's ("InforMD") Motion for Protective Order in Response to Second Set of Interrogatories and Requests for Production of Documents issued by DocRX, Inc. and Brian Ward;[2] and (3) Jesse Daigle and Mickey Guidry's Motion for Protective Order in Response to Second Set of Interrogatories and Requests for Production of Documents issued by DocRX, Inc. and Brian Ward.[3] Pursuant to this Court's request following an in-court status conference on April 1, 2016, the parties have submitted supplemental briefing on: (1) the issue of specialty pharmacy services, specifically regarding the basis for Defendants' position that this business line is included within its counterclaim;[4] and (2) the issue of RC Consulting of Louisiana, LLC's ("RC Consulting") business and what exactly was said in deposition regarding that business.[5]

---

[1] R. Doc. 130.

[2] R. Doc. 152.  InforMD's Motion is filed as both an opposition to Defendants' Motion to Compel and a motion for protective order.  DocRX and Brian Ward filed a Reply Memorandum in Support of the Motion to Compel Discovery Responses from InforMD.  R. Doc. 167.

[3] R. Doc. 153.  Jesse Daigle and Mickey Guidry's Motion is filed as both an opposition to Defendants' Motion to Compel and a motion for protective order.  DocRX and Brian Ward filed a Reply Memorandum in Support of the Motion to Compel Discovery Responses from Mickey Guidry and Jesse Daigle.  R. Doc. 166.

[4] Defendants' supplemental brief on this issue was filed April 11, 2016.  R. Doc. 180.  An opposition to Defendants' supplemental brief was filed by InforMD, Mickey Guidry, Jesse Daigle, Scott Ray, Richard Massengale, and IITWI, LLC on April 21, 2016. R. Doc. 187.

[5] Defendants' supplemental brief on this issue was filed April 11, 2015.  R. Doc. 179.  Mickey Guidry and Jesse Daigle filed a supplemental brief in opposition on April 21, 2016.  R. Doc. 183.

For the reasons set forth herein, Defendants Motion to Compel[6] is DENIED IN PART and GRANTED IN PART.  Guidry and Daigle are ORDERED to respond to Interrogatory No. 1, Interrogatory No. 5(i), Interrogatory No. 6(i), and Request for Production No. 1 within fourteen (14) days of the date of this Ruling.  With respect to specialty pharmacy services, InforMD is ORDERED to provide monthly financial reports similar to the monthly financial reports regarding compounding, drug testing, and dispensing it previously agreed to provide within fourteen (14) days of the date this Ruling and to respond to Interrogatory No. 4, Interrogatory No. 5(iv), and Interrogatory No. 6(iv) within fourteen (14) days of the date of this Ruling.

InforMD's Motion for Protective Order[7] is DENIED.

Guidry and Daigle's Motion for Protective Order[8] is GRANTED IN PART and they are not required to respond to interrogatories or requests for production related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services. However, Guidry and Daigle are ORDERED to submit a verification attesting to: (1) the veracity of their original responses to the discovery requests related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services; and (2) the veracity of their responses to Interrogatory No. 1, Interrogatory No. 5(i), and Interrogatory No. 6(i).

## I.       Background

InforMD brought this breach of contract and declaratory judgment action against DocRX, Inc. and Brian Ward focusing on alleged breaches of a non-solicitation provision in a Confidentiality, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the "November 2011 Agreement")[9] and proper interpretation of provisions in the November 2011

---

[6] R. Doc. 130.

[7] R. Doc. 152.

[8] R. Doc. 153.

[9] DocRX filed a lawsuit in Alabama on June 10, 2010 against Dox Consulting, LLC and its members, Mickey Guidry, Matthew Herfield, Josh Booty, Jesse Daigle, Scott Ray, Rick Massengale, Garrett Hebert, and Stacy Patin.  *DocRX,*

Agreement that allegedly require InforMD to pay DocRX and Ward a certain percentage of gross profits on specified revenue.[10]   In response, Defendants filed a counterclaim against InforMD, IITWI, LLC, Daigle, Massengale, Ray, Guidry, Hebert, and Patin (the "InforMD Parties")[11] for their alleged failure to pay (or to underpay) the 15% and 25% payments "on certain relevant transactions" as provided for in the November 2011 Agreement and failing to share information that would allow DocRX to determine the validity of payments (if any) made each month.[12]   The November 2011 Agreement provides that the Dox Parties (including InforMD) shall not compete with any business engaged in by Defendants except for: (1) "Pre-Settlement Business"[13] for which the Dox Parties pay the 15% Payment to the DocRX Parties; and (2) "Post-Settlement Business"[14]

---

*Inc. v. Dox Consulting, LLC et al.*, Case No. 10-cv-364, United States District Court, Southern District of Alabama. Plaintiff alleges that Dox Consulting, LLC was subsequently dissolved and several of its members formed InforMD. R. Doc. 1, ¶ 32.  In addition to the Alabama lawsuit, IITWI, LLC filed suit against Brian Ward and DocRX, Inc. in Louisiana state court and that suit was subsequently removed to the Middle District.  *IITWI, LLC v. Brian Ward and DocRX, Inc.*, 10-cv-762-JJB-DLD, United States District Court, Middle District of Louisiana.  IITWI, LLC's members are alleged in that suit to be Mickey Guidry, Jesse Daigle, and Chris Lee.  The parties to the November 2011 Agreement are: (1) DocRx, Inc. and Brian Ward (collectively referred to as the "DocRX Parties") on one side; and (2) Dox Consulting, LLC, IITWT, LLC, InforMD, LLC, Mickey Guidry, Jesse Daigle, Richard Massengale, Christopher Lee, Scott Ray, Garrett Hebert, and Stacy Patin (collectively referred to as the "Dox Parties") on the other.

[10] The November 2011 Agreement states that the parties "entered into a Settlement Agreement dated September 8, 2011, on a *pro tanto* basis, a copy of which is attached hereto and incorporated herein by this reference."  R. Doc. 1-4, ¶ A.  The parties sometimes refer to the September 8, 2011 letter and the November 2011 Agreement, collectively, as the "Settlement Agreement."  For ease of reference – and without considering whether and to what extent both documents may or may not constitute the "Settlement Agreement," – the Court herein refers to the November, 2011 Agreement and the September 8, 2011 letter generally as the "Settlement Documents."

[11] The claims against counterclaim defendants Patin and Hebert were dismissed without prejudice on March 16, 2016. R. Doc. 151.

[12] R. Doc. 49 (Defendants' Amended Counterclaim).

[13] Pre-Settlement Business is defined as "any and all sales, services or other business from which the Dox Parties derived revenue (including, without limitation, the Dispensing Business) which has previously, is presently, or is in the future engaged in or offered by the DocRX Parties and which arises from, relates to or is in any way connected with the Dox Parties' use or possession of Pre-Settlement Information…."  R. Doc. 1-4, ¶ E.  Pre-Settlement Information is defined as "confidential information concerning the business and operations of the Dispensing Business and other businesses engaged in by the DocRX Parties" that was obtained by individual Dox Parties formerly employed by DocRX as sales representatives.  R. Doc. 1-4, ¶ C.

[14] Post-Settlement Business is defined as "any and all sales, services or other business from which the Dox Parties derive revenue on or after the date of the Settlement Agreement and which arises from, relates to or is in any way connected with the Dox Parties' use or possession of the Post-Settlement Information…."  R. Doc. 1-4, ¶ G.  Post-Settlement Information is defined as "information regarding the DocRX Parties' products, business concepts, ideas or other information relating to the DocRX Parties' current or prospective business or operations, including, without limitation, drug testing utilizing the MDScripts software platform…."  R. Doc. 1-4, ¶ F.

for which the Dox Parties pay the 25% Payment to the DocRX Parties.[15]  The Defendants'
Counterclaim does not specify the business lines and "relevant transactions" it contends form the
basis of its counterclaim.[16]

## II.    Law and Analysis

### A.  Applicable Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure[17] allows a party to "obtain discovery
regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional
to the needs of the case."  Whether discovery is proportional depends on "the importance of the
issues at stake in the action, the amount in controversy, the parties' relative access to relevant
information, the parties' resources, the importance of the discovery in resolving the issues, and
whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.
Civ. P. 26(b)(1).  Information may fall within this scope of discovery even if it is not admissible
in evidence.  Fed. R. Civ. P. 26(b)(1).

"The court may, for good cause, issue an order to protect a party or person from annoyance,
embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "Rule 26(c)'s
'good cause' requirement indicates that the party seeking a protective order has the burden 'to
show the necessity of its issuance, which contemplates a particular and specific demonstration of

---

[15] R. Doc. 1-4, ¶ 3.

[16] InforMD has indicated in subsequent briefing that it filed this lawsuit in response to a demand letter sent by counsel
for DocRX wherein DocRX demanded a 15% commission on InforMD's gross profit related to InforMD's compound
pharmacy services and a 25% commission on InforMD's gross profit related to InforMD's drug testing business line.
R. Doc. 10-1, pp. 5-6 (Memorandum in Support) & R. Doc. 10-3 (August 5, 2013 letter).  Accordingly, the compound
pharmacy and drug testing business lines are relevant to Defendants' counterclaims.  As discussed herein, the parties
disagree whether the "specialty pharmacy" business is also included in Defendants' counterclaim.

[17] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of
discovery.  The 2015 amendments "restor[e] the proportionality calculation to Rule 26(b)(1)," but do not "change the
existing responsibilities of the court and the parties to consider proportionality."  Fed. R. Civ. P. 26(b)(1) advisory
committee's note (2015).  "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced
and, insofar as just and practicable, in all proceedings then pending."  *American Federation of Musicians of the United
States and Canada v. Skodam Films, LLC*, 313 FRD 39, 45 (N.D. Tex. 2015).  Given the restorative nature of the 2015
amendments, the Court finds that applying the amendments to the instant Motions is both just and practicable.

fact as distinguished from stereotypes and conclusory statements.'"  *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 2016 WL 1089266, at *3 (M.D. La. March 18, 2016) quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).  "The decision to enter a protective order is within the Court's discretion."  *Samson Contour E&P, LLC v. Louisiana Delta Oil Co.*, 2014 WL 2882945, at *2 (E.D. La. June 25, 2014).

### B.  Defendants' Motion to Compel Responses from InforMD

With respect to InforMD, Defendants' discovery requests sought the total dollar amounts generated or received by InforMD as well as supporting documentation for: (1) compound pharmacy services; (2) drug testing services; (3) dispensing services; and (4) specialty pharmacy services.  Defendants also ask for the total amounts in each of the above business lines paid to DocRX and/or Ward and the date(s) payments were discontinued.[18]

In response to the Motion to Compel, InforMD filed a combined opposition and motion for protective order.[19]  Therein, InforMD asserts that it has already produced documentation and information responsive to Defendants' requests, including "over 3,000 pages of raw data related to revenues from compounding, as well as an expert report quantifying the exact information sought."[20]  InforMD urges that information regarding its drug testing services, drug dispensing services, and specialty pharmacy business lines is irrelevant and unlikely to lead to the discovery of relevant information based on its position that the settlement documents do not extend to these services.  "In particular," InforMD asserts, "the substantive breadth of the settlement documents

---

[18] R. Doc. 130-1, pp. 2-5 (citing Interrogatories 1-6 and Requests for Production 1-4).  Defendants also ask for monthly supplementation of the financial information and seek fees and costs associated with the filing of the Motion to Compel.

[19] R. Doc. 152.

[20] R. Doc. 152-1, pp. 1-2.

objectively does not extend to specialty pharmacy services,"[21] a business line that "only began earning revenue as of January 1, 2016" and did not exist at the time the Settlement Documents were confected.[22]

During the in-court status conference on April 1, 2016,[23] the parties discussed the sufficiency of InforMD's previous responses to requests for production which generally relate to financial information for compound pharmacy and drug testing services from September 8, 2011 to present.  Defendants asserted that, while InforMD produced some 3,000 pages of "core" data, Defendants were not able to interpret certain columns contained in that production.[24]  Defendants argued that in any event, they should be allowed to check the validity of the core data and stated they would be able to do so if InforMD produced monthly financial statements and corporate tax returns.[25]  InforMD agreed to produce monthly financial statements from September 8, 2011 through present, as well as corporate tax returns within twenty (20) days of the April 1, 2016 conference.[26]  The parties disagreed as to whether compound pharmacy, drug testing, dispensing, and specialty pharmacy services business lines are at issue in this case; however, InforMD agreed to provide monthly financial reports regarding compounding, drug testing, and dispensing.[27]  InforMD strongly disagreed that specialty pharmacy services are at issue.[28]  Based on the parties'

---

[21] R. Doc. 152-1, p. 6.  As InforMD concludes, "[t]he instant discovery requests are designed to elicit information concerning business activities of InforMD that were not contemplated by and which are far beyond the scope of the 2011 Settlement Agreement, and thus, are irrelevant and immaterial to this proceeding."  R. Doc. 152-1, p. 8.

[22] R. Doc. 152-1, p. 6.

[23] R. Doc. 170.

[24] R. Doc. 170, p. 3.

[25] R. Doc. 170, p. 3.

[26] R. Doc. 170, p. 3.  Specifically with regard to the discovery requests directed at InforMD at issue in the instant Motion to Compel, Defendants explained that due to the trial date in April, 2017, they requested monthly supplementation of InforMD's revenues related to compound pharmacy, drug testing, dispensing, and specialty pharmacy services.  R. Doc. 170, p. 5.

[27] R. Doc. 170, p. 6.

[28] R. Doc. 170, p. 6.

agreements during the April 1, 2016 conference, the Court found the Motion to Compel PARTIALLY MOOT with regard to compound pharmacy, drug testing, and dispensing services by agreement of the parties.  With respect to the issue of whether specialty pharmacy services are included in Defendants' counterclaim, the Court requested supplemental briefing.[29]  The Court has reviewed the requested supplemental briefing and is now ready to rule.[30]

In their Amended Counterclaim, Defendants assert a claim for 15% payments of the counterclaim defendants' gross profit "on certain relevant transactions" and 25% payments of gross profit "on certain other relevant transactions."[31]  The Amended Counterclaim does not specify what Defendants consider "relevant transactions;" however, in their supplemental briefing, Defendants assert that they are making claims for a percentage of InforMD's gross profit on "all business lines which InforMD got using information from DocRX and Ward"[32] and that "InforMD's entry into the specialty pharmacy services business line arose from, relates to or is at least connected with InforMD's use or possession of pre-settlement information, as that term is defined in the Settlement Agreement…."[33]

In response, the InforMD Parties argue that information about its specialty pharmacy line is outside the scope of permissible discovery.  Specifically, the InforMD Parties argue that Defendants misinterpret the parties' agreement and that, based on the terms of the Settlement Documents, InforMD "ostensibly agreed to pay DocRX 15% of InforMD's 'gross profits' but *only* where such profits are generated as a result of InforMD's use or possession of confidential information regarding DocRX's business…that the individual Dox Parties obtained in their

---

[29] R. Doc. 170, p. 6.

[30] *See*, R. Docs. 180 & 187.

[31] R. Doc. 49, ¶ 9.

[32] R. Doc. 180, p. 3.

[33] R. Doc. 180, p. 4.

7

capacities as sale representatives for the DocRX Parties, and *only* where DocRX is actually 'engaged in or offer[ing]' that same line of business."[34]  Because Defendants have not pointed to any connection between InforMD's specialty pharmacy business line and its "use or possession" of "confidential information" concerning DocRX's businesses that the InforMD Parties obtained in their capacities as sales representatives for DocRX, the InforMD Parties assert that information regarding specialty pharmacy services is outside the scope of the parties' agreement and therefore not discoverable.[35]  The InforMD Parties additionally argue that Defendants cannot point to any confidential information used by InforMD in creating its specialty pharmacy business line,[36] that the information requested would not help Defendants' prove a claim related to this business line,[37] and that in any event, Alabama law prohibits Defendants' broad reading of the Settlement Documents.[38]

The Court notes that information may fall within the scope of discovery even if it is not admissible in evidence.  Fed. R. Civ. P. 26(b)(1); *Williams v. United States Environmental Services, LLC*, 2016 WL 684607, at *1 (M.D. La. Feb. 18, 2016).  Relevancy is generally "construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'"  *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) citing *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1).  However, the scope of discovery is not without bounds and Defendants must establish that their requests are relevant to

---

[34] R. Doc. 187, p. 4.

[35] *See*, R. Doc. 187, p. 5.

[36] R. Doc. 187, p. 7.

[37] R. Doc. 187, pp. 7-9.

[38] R. Doc. 187, pp. 9-11.

their claims and defenses as well as proportional to the needs of the case.  Here, Defendants have made a broad allegation of entitlement to 15% or 25% payments on "certain relevant transactions."

The Court agrees with the InforMD Parties that Mr. Ward's deposition testimony does not clearly address the specialty pharmacy business line and Defendants have not explained how Mr. Ward's discussion of the sale of products to pharmacies from manufacturers and wholesalers is related to a claim for gross profits connected to that line.[39]  While it is apparent based on other pleadings and supporting evidence that the catalyst for this suit was whether commissions are owed related to compound pharmacy and drug testing services,[40] Defendants assert that the Settlement Documents must be more broadly read to cover other business lines, including specialty pharmacy services.  The issue of whether Defendants' interpretation of the Settlement Documents is correct is before the district court via motion practice.[41]  At base, the InforMD Parties ask this Court to prejudge issues related to the scope and enforceability of the Settlement Documents to find information and documents related to specialty pharmacy services cannot possibly be relevant.  In the event the district court rules that the Settlement Documents are more limited than the interpretation advocated by the Defendants, information and documents related to specialty pharmacy services may well be rendered irrelevant.  However, this Court declines to make such a determination in light of the pending substantive motions on those issues.  Accordingly, Defendants Motion to Compel[42] is GRANTED IN PART and InforMD's Motion for Protective

---

[39] As pointed out by the InforMD Parties, Mr. Ward's deposition testimony does not specifically mention specialty pharmacy services and "it is unclear whether or not this testimony even related to the specialty pharmacy line" rather than more generally "sales of manufactured goods to pharmacies" – which DocRX lists as a separate business line in its briefing.  R. Doc. 187, p. 6.

[40] InforMD has asserted that it filed this lawsuit in response to an August 5, 2013 demand letter from DocRX's counsel.  *See*, R. Doc. 10-1, pp. 5-6.  That letter demand payments for compound pharmacy and drug testing services.  R. Doc. 10-3.

[41] *See*, R. Docs. 101, 104, 160, and 162.

[42] R. Doc. 130.

Order[43] is DENIED.  With respect to specialty pharmacy services, InforMD is ORDERED to provide monthly financial reports similar to the monthly financial reports regarding compounding, drug testing, and dispensing it previously agreed to provide within fourteen (14) days of this Ruling and to respond to Interrogatory No. 4,[44] Interrogatory No. 5(iv),[45] and Interrogatory No. 6(iv)[46] within fourteen (14) days of the date of this Ruling.

### C.  Defendants' Motion to Compel Responses from Guidry and Daigle

With respect to Guidry and Daigle, Defendants assert that Guidry and Daigle formed a new entity, RC Consulting, in 2014 and that the agreement between the parties requires the InforMD Parties "and any new company affiliated with one and/or all of them" to pay "a certain percentage of their gross profit on any business line meeting the requirements set forth in the Settlement Agreement."[47]  Accordingly, Defendants request the total dollar amounts generated or received by RC Consulting as well as supporting documentation for: (1) compound pharmacy services; (2) drug testing; (3) dispensing; and (4) specialty pharmacy services.  Defendants also ask for the total amounts in each of the above business lines paid to DocRX and/or Ward and the date(s) payments were discontinued.[48]  As discussed below, although Defendants seek to compel discovery from

---

[43] R. Doc. 152.

[44] Interrogatory No. 4 provides: "State the total dollar amount revenue generated or received by InforMD for specialty pharmacy services between September 8, 2011 and the trial of this matter.  This interrogatory is continuing in nature and asks that you provide the amount of revenue from September 8, 2011 through the date of your answer to this interrogatory, and that you supplement your answer to this interrogatory each month with the amount of revenue for that month, and that you continue producing supplemental responses up to the date of the trial."

[45] Interrogatory No. 5(iv) provides: "State the total dollar amount of payments made by you to DocRX and/or Brian Ward for each of the following business lines from September 8, 2011 until the present date….(iv) specialty pharmacy lines."

[46] Interrogatory No. 6(iv) provides: "State the date on which you discontinued making payments to DocRX and/or Brian Ward for each of the following business lines….(iv) specialty pharmacy services."

[47] R. Doc. 130-1, p. 2.

[48] R. Doc. 130-1, pp. 8-10 (citing Interrogatories 1-6 and Requests for Production 1-4).

Daigle and Guidry related to four business lines, the parties' briefing and the deposition testimony cited by Defendants in support of their request is focused solely on compound pharmacy services.

Defendants allege that "DocRX and Ward first learned at Guidry's deposition that Daigle and Guidry were channeling revenues from compounding through a side company which they set up under the name of RC Consulting."[49]  Defendants complain that Guidry and Daigle's written responses to the discovery requests – which set forth that RC Consulting has generated and/or received "zero dollars" for the four business lines and has no responsive documents – "are contrary to Guidry's deposition testimony in which he described the manner in which RC Consulting received substantial income from compound pharmacy services."[50]

Like InforMD, Guidry and Daigle filed a combined opposition and motion for protective order in response to Defendants' Motion to Compel.[51]  Daigle and Guidry assert that RC Consulting has never participated in the four business lines and that Guidry's deposition testimony is being misread by Defendants.[52]  Specifically, Daigle and Guidry assert that while Guidry's testimony shows RC Consulting received investment returns from "pharmacy management services," "drug compounding" is a very specific and highly regulated business that is materially different from pharmacy management.[53]

---

[49] R. Doc. 130-1, p. 7.

[50] R. Doc. 130-1, p. 11.  Based on the exhibits attached to Defendants' Motion to Compel, it is not clear whether Daigle and Guidry's responses to interrogatories were accompanied by the required verification. Fed. R. Civ. P. 33(b); *US EEOC v. Denham Springs Pub. Co., Inc.*, 2012 WL 262268, at *1 (M.D. La. Jan 27, 2012) ("[T]he copies of defendant's answers to interrogatories provided to me in connection with this motion [to compel] do not include the verification of answers…required by Fed. R. Civ. P. 33(b)(1), (3), and (5).  Thus, the required verification of *all* interrogatory answers must be provided.").

[51] R. Doc. 153.

[52] *See*, R. Doc. 153-1, p. 3 ("There are no documents in Daigle and Guidry's possession that relate to compounding pharmacy, drug testing, dispensing services, and pharmacy services because RC Consulting does not participate, and has not ever participated, in those business lines.").

[53] R. Doc. 153-1, pp. 5-7.

11

During the April 1, 2016 conference, the parties discussed the deposition testimony of Mr. Guidry and Mr. Daigle regarding the business of RC Consulting.[54]  Following that discussion, the Court requested supplemental briefing on the issue of RC Consulting's business and exactly what was said in deposition about that business.[55]  The Court has reviewed the supplemental briefing and is now ready to rule.[56]

In their supplemental briefing, Defendants again direct the Court to the deposition testimony of Mr. Mickey Guidry.[57]  Mr. Guidry's deposition testimony indicates that RC Consulting has a "management arrangement" with Cornerstone Pharmacy.[58]  Mr. Guidry confirmed in deposition that Cornerstone Pharmacy provides "mail-order compounding."[59]  When given a hypothetical situation involving "a prescription for a mail-order compound for $500,"[60] Mr. Guidry explained that part of that $500 would be remitted to InforMD[61] and part of that $500 remaining with Cornerstone would be remitted to RC Consulting[62] for "management" services.[63] This Court agrees that the "deposition testimony of Guidry, Daigle and Massengale fails to give a clear picture of what RC Consulting does;"[64] however, a review of Mr. Guidry's testimony in

---

[54] R. Doc. 170, p. 7.  During the April 1, 2016 conference, InforMD's counsel explained that Mr. Guidry and Mr. Daigle are the sole members of RC Consulting.  Counsel for InforMD further represented that to the extent this Court rules that records related to RC Consulting must be produced, Mr. Daigle and Mr. Guidry will produce those records in response to the requests issued to them by Defendants which are the subject of the Motion to Compel.  R. Doc. 170, pp. 6-7.

[55] R. Doc. 170, p. 7.

[56] *See*, R. Doc. 179 and 183.

[57] R. Doc. 153-4.

[58] R. Doc. 153-4, p. 18:1-11.

[59] R. Doc. 153-4, p. 20:5-12.

[60] R. Doc. 153-4, p. 27:24-25.

[61] R. Doc. 153-4, p. 28:2-18.

[62] R. Doc. 153-4, p. 35:3-8.

[63] R. Doc. 153-4, pp. 33:25-34:1.

[64] R. Doc. 179, p. 4.  Guidry and Daigle argue that because "[t]he business activities of RC Consulting in no way conform to the statutory definition of 'compounding,'" RC Consulting does not "as a matter of law" "participate in 'compounding.'"  R. Doc. 153-1, p. 6. Based on this Court's review of Mr. Guidry's deposition testimony as discussed herein, the Court finds that it appears possible that RC Consulting is receiving or generating revenue from "compound

particular indicates that it is possible RC Consulting receives revenues for compounding services. To the extent Defendants are able to prove that RC Consulting is being used as an "end-run" around the alleged requirement that InforMD pay commissions to Defendants for a compound pharmacy services business line, these documents would be relevant.  Moreover, it appears that neither Daigle nor Guidry were able to identify any other sources of income (other than pharmacy management apparently related to compounding services) for RC Consulting.[65]

Based on the deposition testimony of Mr. Guidry in particular, the Court finds that documents related to RC Consulting and compound pharmacy services are discoverable. However, Defendants have made no showing that documents related to RC Consulting and drug testing, dispensing, or specialty pharmacy services are discoverable.  Accordingly, the Motion to Compel is GRANTED IN PART.[66]  Guidry and Daigle are instructed to respond to Interrogatory No. 1,[67] Interrogatory No. 5(i),[68] Interrogatory No. 6(i),[69] and Request for Production No. 1.[70]

---

pharmacy services," at least as that term is understood by the parties.  To the extent Mr. Daigle and Mr. Guidry remain firm in their responses that RC Consulting has received "zero dollars" for compound pharmacy services, they are required to verify those responses.

[65] To the extent Daigle and Guidry are concerned with confidentiality, there is a Stipulated Protective Order in place. R. Doc. 70 and 71.

[66] In response to Defendants' supplemental briefing, Daigle and Guidry argue that Defendants have no right to recover payments from RC Consulting pursuant to the terms of the Settlement Documents.  The issue of the scope and enforceability of the Settlement Documents is presently before the district court.  To the extent the district court ultimately limits the reach of the Settlement Documents, Daigle and Guidry may thereafter be correct that documents related to RC Consulting's recent revenues are irrelevant; however, such a ruling has not yet occurred and this Court will not usurp that determination now.

[67] Interrogatory No. 1 provides: "State the total dollar amount of revenue generated or received by RC Consulting for compound pharmacy services between September 8, 2011 and the trial of this matter.  This interrogatory is continuing in nature and asks that you provide the amount of revenue from September 8, 2011 through the date of your answer to this interrogatory, and that you supplement you answer to this interrogatory each month with the amount of revenue for that month, and that you continue producing supplemental responses up to the date of the trial."

[68] Interrogatory No. 5(i) provides: "State the total dollar amount of payments made by RC Consulting to DocRC and/or Brian Ward for each of the following business lines from September 8, 2011 until the present date: (i) compound pharmacy services."

[69] Interrogatory No. 6(i) provides: "State the date on which RC Consulting discontinued making payments to DocRX and/or Brian Ward for each of the following business lines: (i) compound pharmacy services."

[70] Request for Production No. 1 requests: "any and all documents relating to or reflecting revenue generated or received by RC Consulting for providing compound pharmacy services between September 8, 2011 through the date of the trial in this matter.  This request for production is continuing in nature and requests that you produce any and all documents relating to or reflecting revenue generated or received by RC Consulting from September 8, 2011 through the date of

Guidry and Daigle's Motion for Protective Order is GRANTED IN PART and they are not required to respond to interrogatories or requests for production related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services. However, Guidry and Daigle are instructed to submit a verification attesting to: (1) the veracity of their original responses to the discovery requests related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services; (2) the veracity of their responses to Interrogatory No. 1, Interrogatory No. 5(i), and Interrogatory No. 6(i).

### III.    Conclusion

For the reasons set forth herein, Defendants Motion to Compel[71] is DENIED IN PART and GRANTED IN PART.  Guidry and Daigle are ORDERED to respond to Interrogatory No. 1, Interrogatory No. 5(i), Interrogatory No. 6(i), and Request for Production No. 1 within fourteen (14) days of the date of this Ruling.  With respect to specialty pharmacy services, InforMD is ORDERED to provide monthly financial reports similar to the monthly financial reports regarding compounding, drug testing, and dispensing it previously agreed to provide within fourteen (14) days of the date of this Ruling and to respond to Interrogatory No. 4, Interrogatory No. 5(iv), and Interrogatory No. 6(iv) within fourteen (14) days of the date of this Ruling.

InforMD's Motion for Protective Order[72] is DENIED.

Guidry and Daigle's Motion for Protective Order[73] is GRANTED IN PART and they are not required to respond to interrogatories or requests for production related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services.

---

your response to this request for production, and that you supplement your response to the request for production each month with the amount of revenue for that month, and that you continue producing supplemental responses up to the date of the trial."

[71] R. Doc. 130.

[72] R. Doc. 152.

[73] R. Doc. 153.

However, Guidry and Daigle are ORDERED to submit a verification attesting to: (1) the veracity of their original responses to the discovery requests related to RC Consulting and drug testing, RC Consulting and dispensing, or RC Consulting and specialty pharmacy services; and (2) the veracity of their responses to Interrogatory No. 1, Interrogatory No. 5(i), and Interrogatory No. 6(i).

     Signed in Baton Rouge, Louisiana, on May 3, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**